IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:15-CV-00266-F

| | |
|---|---|
| MONICA L. HORNAL, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-17, DE-19] pursuant to Fed. R. Civ. P. 12(c). Claimant Monica L. Hornal ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. Claimant responded to Defendant's motion [DE-22] and the time for filing a reply has expired. Accordingly, the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be denied, Defendant's Motion for Judgment on the Pleadings be allowed, and the final decision of the Commissioner be upheld.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability, DIB, and SSI on October 16, 2013, alleging disability beginning March 15, 2013. (R. 14, 238-45). Both claims were denied initially and upon reconsideration. (R. 14, 66-137). A hearing before the Administrative Law Judge

("ALJ") was held on July 27, 2015, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified. (R. 31-65). On August 24, 2015, the ALJ issued a decision denying Claimant's request for benefits. (R. 11-30). Claimant then requested a review of the ALJ's decision by the Appeals Council (R. 8-9), and requested an extension of time to submit new evidence (R. 10), which the Appeals Council granted (R. 1-2). Claimant submitted a representative brief as part of her request for review. (R. 329-30). After reviewing and incorporating the additional evidence into the record, the Appeals Council denied Claimant's request for review on November 10, 2015. (R. 3-7). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270

2

F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision

3

pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

In this case, Claimant alleges that the ALJ erred by incorrectly assessing Claimant's sarcoidosis in conjunction with Listing 3.02C. Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings ("Pl.'s Mem.") [DE-18] at 7-11.

## IV. FACTUAL HISTORY

### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 16). Next, the ALJ determined Claimant had the following severe impairments: sarcoidosis, depression/bipolar disorder, and anxiety. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 16-17). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in moderate limitations in her activities of daily living, social functioning, and concentration, persistence, and pace with no episodes of decompensation. (R. 17-18).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] except that she could occasionally climb ramps or stairs, never climb

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R.

4

ladders, ropes, or scaffolds, frequently balance and stoop, and occasionally kneel, crouch, and crawl. (R. 19). Claimant must have "little, if any, exposure to extreme heat and extreme cold; little if any, exposure to concentrated levels of pulmonary irritants such as dust, odors, fumes, and gases and to poorly ventilated areas; no exposure to toxic or caustic chemicals; and no exposure to unprotected heights, hazardous machinery or moving mechanical parts." *Id.* Claimant was limited to simple, routine, and repetitive tasks, simple work-related decisions, and could have frequent interaction with the public, co-workers, and supervisors. *Id.* The ALJ determined that Claimant would be off task no more than 10 percent of the time in an eight-hour workday, in addition to normal breaks (15 minutes in the morning and afternoon and 30 minutes for lunch). *Id.* In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 20-21).

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as a childcare provider and a warehouse worker. (R. 24). Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 24-25).

## V. DISCUSSION

### A.  The ALJ's Consideration of Listing 3.02C

Claimant argues that the ALJ incorrectly found her sarcoidosis did not meet Listing 3.02C where her July 21, 2014 pulmonary test results (R. 437-41) reflected diffusing capacity of the lungs for carbon monoxide ("DLCO") scores of 10.6, 10.7, and 9.3 mL/mmHg/min, with an average of

---

§§ 404.1567(b), 416.967(b).

10.2 mL/mmHg/min. Pl.'s Mem. [DE-18] at 7-11. Claimant cites to *Cook v. Heckler*, 783 F.2d 1168 (4th Cir. 1986), and *Radford v. Colvin*, 734 F.3d 288 (4th Cir. 2013) in support of her argument that the ALJ erred and this error requires remand. *Id.* In response, the Commissioner contends that *Radford* only applies where the ALJ fails to discuss conflicting record evidence, and the ALJ did not err in his listings analysis here where the record did not contain any acceptable DLCO scores. Def.'s Mem. [DE-20] at 5-9. In response, Claimant argues that the Commissioner is attempting to justify the ALJ's findings by providing additional reasoning not found in the decision itself. Pl.'s Resp. [DE-22] at 1-2.

To show disability under the listings, a claimant may present evidence either that the impairment meets or medically equals a listed impairment. *Kellough v. Heckler*, 785 F.2d 1147, 1152 (4th Cir. 1986); 20 C.F.R. §§ 416.925, 416.926. Disability is conclusively established if a claimant's impairments meet all the criteria of a listing or are medically equivalent to a listing. 20 C.F.R. §§ 404.1520(d), 416.920(d), 416.925(c)(3), 416.926. "The [ALJ] . . . is responsible for deciding . . . whether a listing is met or equaled." S.S.R. 96-6p, 1996 WL 374180, at *3 (July 2, 1996). "Plaintiffs bear the burden of proving their condition meets a listing and, accordingly, the responsibility of producing evidence to sustain their claims." *Rowe v. Astrue*, No. 5:07-CV-478-BO, 2008 WL 4772199, at *1 (E.D.N.C. Oct. 28, 2008) (unpublished) (citing *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995)). Thus, where a claimant "fails to articulate why her medical impairments do, in fact, meet all of the elements of a given listed impairment," she fails to meet this burden. *Id.* (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).

At the relevant time, Listing 3.02C, entitled "Chronic impairment of gas exchange," required Claimant to demonstrate evidence of a single breath DLCO score less than 10.5 mL/min/mmHg or

6

less than 40% of the predicted normal value.[2] 20 C.F.R. pt. 404, subpt. P, app. 1, § 3.02C(1) (available at Program Operations Manual System ("POMS") § DI 34123.009, https://secure.ssa.gov/poms.nsf/lnx/0434123009). For adjudication, the DLCO value "should represent the mean of at least two acceptable measurements," which must include "[s]ufficient data . . . including documentation of the source of the predicted equation, to permit verification that the test was performed adequately, and that, if necessary corrections for anemia or carboxyhemoglobin were made appropriately." *Id.* § 3.00F(1). Acceptable measurements are defined as follows:

> [t]he inspired volume (VI) during the DLCO maneuver should be at least 90 percent of the previously determined vital capacity (VC). The inspiratory time for the VI should be less than 2 seconds, and the breath-hold time should be between 9 and 11 seconds. The washout volume should be between 0.75 and 1.00 L, unless the VC is less than 2 L. In this case, the washout volume may be reduced to 0.50 L; any such change should be noted in the report. The alveolar sample volume should be between 0.5 and 1.0 L and be collected in less than 3 seconds. At least 4 minutes should be allowed for gas washout between repeat studies.

*Id.*

The Fourth Circuit has found error where there is evidence in the record that would support a finding that a claimant's impairments meet a listing, but the ALJ failed to provide a full explanation in support of a contrary determination. *See Radford*, 734 F.3d at 295 (concluding the ALJ's "insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings") (citing *Cook*, 783 F.2d at 1173). Where there are inconsistencies in the record and the ALJ fails to conduct the requisite analysis, the court cannot conduct a meaningful review. *See Fox v. Colvin*, 632 F. App'x 750, 755 (4th Cir. 2015) (unpublished) (per curiam) (remanding where the ALJ failed to explain the claimant's failure to meet

---

[2] While there is a second section of 3.02C dealing with arterial blood gas values of $PO_2$, Claimant's argument only addresses the section dealing with DLCO scores.

7

a listing and there was contradictory evidence in the record) (citing *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015); *Radford*, 734 F.3d at 296). However, where there is no record evidence that could support the application of a listing, "the ALJ [is] not required to engage in a discussion of why the evidence did not qualify [the claimant] as disabled under that [l]isting." *Ebison v. Colvin*, No. 4:14-CV-135-FL, 2015 WL 5725643, at *4 (E.D.N.C. Sept. 30, 2015) (unpublished); *accord Mills v. Colvin*, No. 5:13-CV-432-FL, 2014 WL 4055818, at *4 (E.D.N.C. Aug. 14, 2014) (unpublished) ("Although the ALJ did not reference Listing 1.02 and Listing 1.04 specifically, additional discussion was not required because there was not 'ample evidence in the record' to support application of Listing 1.02 and Listing 1.04."). Accordingly, the court must consider whether there is evidence in the record regarding Listing 3.02C that could support a finding favorable to Claimant.

Here, the Commissioner argues that the ALJ did not err in finding that Claimant's sarcoidosis did not meet Listing 3.02C because the record contained no acceptable DLCO measurements. Def.'s Mem. [DE-20] at 5-9. Specifically, the Commissioner notes that the alveolar volume (VA) exceeded the level required by the regulations and the record does not include sufficient data to allow for verification that the test was performed properly. *Id.* A review of the documentation for the July 21, 2014 DLCO testing demonstrates that the Commissioner has correctly pointed out deficiencies which preclude the resulting scores from being used as acceptable measurements per the regulations. (R. 437-41). According to section 3.00F(1), "[t]he alveolar sample volume should be between 0.5 and 1.0L and be collected in less than 3 seconds." 20 C.F.R. pt. 404, subpt. P, app. 1, § 3.00F(1) (available at POMS § DI 34123.009). The alveolar volume for Claimant's three trials was 2.52L, 2.29L, and 1.63L—all well above the permissible range. (R. 440). Additionally, there is no information in the DLCO test report to document that the inspired volume, the inspiratory and

8

breath-hold times, and the washout volume were in the appropriate ranges and the percentage concentrations of inspired and expired gases are not documented for each trial. *See* (R. 337-41). While Claimant argues that upholding the ALJ's listings analysis on these grounds would be impermissibly applying additional reasoning not supplied by the ALJ himself, this argument is without merit where Claimant's DLCO test results are not acceptable measurements per the regulations. Further, Claimant provides no response to Defendant's argument as to why the DLCO scores of record are not acceptable measurements. Accordingly, here, there is no record evidence that could support the application of Listing 3.02C, and "the ALJ [is] not required to engage in a discussion of why the evidence did not qualify [the claimant] as disabled under that [l]isting." *Ebison*, 2015 WL 5725643, at *4; *accord Jones v. Comm'r of Soc. Sec.*, No. SAG-10-3047, 2013 WL 1163499, at *2 (D. Md. Mar. 9, 2013) (unpublished) (holding that the ALJ did not have to evaluate Listing 3.02C when the record contained no acceptable DLCO test results and discussing how the test results contained in the record failed to meet the requirements of section 3.00F(1)). Thus, the ALJ did not err in his consideration of Claimant's sarcoidosis and the listings.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-17] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-19] be ALLOWED and the final decision of the Commissioner be UPHELD.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **January 27, 2017** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the

9

Case 7:15-cv-00266-F Document 23 Filed 01/13/17 Page 9 of 10

Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within **14 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, this the 13 day of January, 2017.

Robert B. Jones, Jr.
United States Magistrate Judge